```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
RANDY HIGHTOWER,                        : 11 Civ. 8000 (JSR) (JCF)
                                        : 07 Cr. 1111 (JSR)
            Movant,                     :
                                        :       REPORT AND
    - against -                         :    RECOMMENDATION
                                        :
UNITED STATES OF AMERICA,               :
                                        :
            Respondent.                 :
- - - - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:

Randy Hightower, proceeding pro se, filed this Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255, claiming that the ineffectiveness of his trial counsel led to his conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Specifically, he asserts that counsel failed to obtain the transcript of grand jury proceedings which could have been used for impeachment at his trial and a related hearing. (Defendant's Memorandum of Law in Support of Motion ("Def. Memo."), at 7-9).[1] For the following reasons, I

---

[1] Mr. Hightower filed the standard Section 2255 form along with seven attachments. The first attachment is his Memorandum of Law, although he does not designate it as such. The next five are excerpts from transcripts of Mr. Hightower's state grand jury proceedings and federal trial. Because not all of these are clearly identified by description and date, I will follow the defendant's practice and identify them as Defendant's Appendices ("Def. Appx.") 1 through 5. The final attachment is the federal criminal complaint in Mr. Hightower's case, which I will identify as Defendant's Appendix 6.

1

recommend that the motion be denied.

Background and Procedural History

Mr. Hightower was arrested in the Bronx on November 11, 2007. (Def. Memo. at 2). Two New York City Police Department officers -- Natalie Bishop and Zoja Shala -- testified before a New York state grand jury regarding the events of that date. (Def. Memo. at 2-4; Memorandum of Law of the United States of America in Opposition to the Defendant's Motion ("Resp. Memo.") at 1-2).

Officer Bishop testified that, while responding to a 911 call warning of a man with a firearm, she observed Mr. Hightower, who fit the description provided by the caller, at the indicated location. (Def. Memo. at 2; Def. Appx. 1 at 4-5). As she approached, Mr. Hightower fled. (Def. Memo. at 3; Def. Appx. 1 at 4). When Mr. Hightower began to enter a building, Officer Bishop "observed a silver shiny object fall from his person," which she identified as a firearm. (Def. Appx. 1 at 5; Def. Memo. at 3). Later in the proceeding, she testified that it "fell from his right side pocket area." (Def. Appx. 1 at 6). When asked by the Assistant District Attorney if she observed the gun "drop[] from the defendant's pockets," she answered, "Yes." (Def. Appx. 1 at 7-8; Def. Memo. at 3).

Officer Shala testified similarly. In response to the Assistant District Attorney's question, "Did you see the defendant

drop anything . . . while he was running back into the building," Officer Shala replied, "Yes, right in front of the building he actually fell and dropped the gun." (Def. Appx. 4 at 2; Def. Memo. at 4).

Neither Officer Bishop nor Officer Shala testified before the federal grand jury that indicted Mr. Hightower for being a felon in possession of a firearm. (Resp. Memo. at 1, 3; Letter of Ira D. London and Meredith S. Heller dated March 9, 2009, attached as Exhibit B to Resp. Memo. ("London Ltr."), at 7). Instead, the government relied exclusively on the testimony of Detective Barbot, who was not at the scene of the arrest but received information about it from Officers Bishop and Shala.[2] (Resp. Memo. at 3; London Ltr. at 3, 7; Def. Appx. 6 at 2).

The case was originally assigned to the Honorable Victor Marrero, U.S.D.J. Mr. Hightower moved to suppress all statements made and evidence seized at the scene, arguing that he had been stopped without reasonable suspicion. (Memorandum in Support of First Motion to Suppress All Evidence and Statements at 1, United States v. Hightower, No. 07 Cr. 1111 (S.D.N.Y. April 11, 2008)). Judge Marrero denied the motion. (Decision and Order dated June

---

[2] In the criminal complaint, Detective Barbot does not identify by name the two officers he spoke to, but it is clear from his recitation of the information he received that they are Officers Bishop and Shala. (Def. Appx. 6 at 2).

27, 2008, at 1).

The case was then reassigned to the Honorable Jed S. Rakoff, U.S.D.J.  Prior to trial, Mr. Hightower waived his right to a jury.  (Waiver of Trial by Jury dated Dec. 17, 2008).  At trial, Officer Bishop testified that, while she was chasing Mr. Hightower, he fell.  (Tr. at 23-26).[3]  As soon as the defendant got back up, she observed that "right where he fell there's a gun."  (Tr. at 26).  She further testified, in response to questions from the prosecution, that she "didn't actually see [the gun] fall from [the defendant's] pockets."  (Tr. at 46).  On cross-examination, Officer Bishop stated, "I didn't see [the gun] fall like out of a pocket or anything, no, but I saw it.  As soon as he got up, I saw it right in that area."  (Tr. at 65).  Officer Shala testified that she did not "see the gun on the defendant's person or in his jacket pocket" and that she did not "see the gun fall from the defendant."  (Tr. at 110-11, 112).  Rather, she saw the defendant fall, and then she saw the gun in the location where he had fallen.  (Tr. at 113).

At the close of the evidence, Mr. Hightower renewed his motion to suppress.  (Tr. at 200).  After hearing argument and taking

---

[3] "Tr." refers to the trial transcript.  The government attaches excerpts of the transcript to the Respondent's Memo. as Exhibit A.  However, because some relevant portions have been left out of that attachment, I will rely on the complete transcript of Mr. Hightower's trial and sentencing.

4

testimony from Mr. Hightower, Judge Rakoff denied the suppression motion.  (Tr. 201-45, 247, 254).  Thereafter, he found Mr. Hightower guilty.  (Tr. at 277).  Following his conviction, Mr. Hightower made a motion to dismiss the indictment (London Ltr. at 1), which Judge Rakoff denied.  (S. Tr. at 2-3).[4]

Discussion

For a defendant to obtain a reversal of his conviction because of ineffective assistance of trial counsel, he must "demonstrate both that (1) the performance of his counsel was objectively unreasonable and (2) there is a reasonable probability that, but for his counsel's deficient performance, the result of the proceeding would have been different." Parker v. Ercole, 666 F.3d 830, 834 (2012) (citing Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984)).  When reviewing the performance of trial counsel, a habeas corpus court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. The court must not rely upon hindsight to second-guess counsel's unsuccessful trial strategy.  Id.

Mr. Hightower complains that his trial counsel failed to obtain transcripts of grand jury testimony related to his criminal

---

[4] "S. Tr." refers to the transcript of the sentencing proceedings, attached as Exhibit C to the Respondent's Memo.

case and use the transcripts at trial to impeach the credibility of Officers Bishop and Shala. (Def. Memo. at 5, 8-9). He argues that this strategy would have been helpful in connection with both the guilt phase of his criminal proceedings and the suppression motion. (Def. Memo. at 8-9).

As a preliminary matter, although two grand juries were convened in connection with the defendant's arrest, it is not clear whether Mr. Hightower's motion is referring to the transcript from the state grand jury, the federal grand jury, or both. In light of the requirement that I construe pro se pleadings liberally, see, e.g., Estelle v. Gamble, 429 U.S. 97, 106 (1976), I will analyze the defendant's claim in relation to both grand jury transcripts.

Mr. Hightower's Memorandum of Law focuses on the state grand jury testimony of Officer Bishop and Officer Shala and its inconsistency with their trial testimony. (Def. Memo. at 3-4, 5-7 ("The government's case-in-chief consisted mainly of the testimonies of two of its witnesses -- Officer Bishop and Officer Shala. . . . The testimonies adduced at trial [were] in clear contradiction of the officers['] prior grand jury testimonies."). He argues that had his trial counsel confronted the officers with their prior inconsistencies, their "testimony would have been grossly impeached during the suppression hearing and trial." (Def. Memo. at 7).

However, the trial transcript shows that the defendant's trial counsel actually did impeach Officers Bishop and Shala with their inconsistent grand jury testimony. For example, defense counsel engaged in this colloquy with Officer Bishop:

> Q: Did you actually see a silver object fall from [the defendant's] clothing onto the ground at any point?
>
> A: I didn't see it fall like out of a pocket or anything, no, but I saw it. As soon as he got up, I saw it right in that area.
>
> Q: Did you say in the grand jury you saw it fall from his pocket to the ground?
>
> A: I said I saw it fall from his pocket area is I believe what I said. I didn't see it fall from the pocket.
>
> Q: Was that a lie you told to the grand jury?
>
> A: No, sir.
>
> Q: How do you account for giving that testimony if it never happened?
>
> A: I can see how -- when I hear it out loud, I can see how it can be misleading or maybe like inaccurate, like the judge said, but I hope I'm being clear now and being able to answer any questions that maybe weren't half said or cleared up.

(Tr. at 65-66).

Defense counsel posed similar questions to Officer Shala:

> Q: Officer Shala, on page 13 of the grand jury testimony, you said in response to this question: "Q. Did you see the defendant drop anything else while he was running back into the building?" And you answered:
> "A.  Yes, right in front of the building, he

>    actually fell and dropped the gun."
>
>    . . . .
>
>    Q:   . . . That was a lie, wasn't it?
>
>    A:   No -- well, no, it wasn't a lie.  It was the way I worded it.  When he fell, I tried to say he basically got up and the gun was there.
>
>    Q:   But you didn't say that.  You said "he dropped the gun" in very clear English, very simple English, "he dropped the gun."  Is that correct?
>
>    A:   That's what I said in the statement.
>
>    . . . .
>
>    Q:   Did you tell the truth in that statement?
>
>    A:   I -- that statement I basically worded it wrong.
>
>    Q:   Did you tell the truth in that statement?
>
>    A:   No, that's not the truth in that statement.

(Tr. at 116-17).  Clearly, the defendant's counsel used the officers' grand jury testimony to impeach them at trial.  Thus, counsel's performance was not objectively unreasonable.

   Moreover, even if his counsel had failed to obtain the grand jury testimony or failed to use it to impeach the trial testimony of Officer Bishop and Officer Shala, Mr. Hightower could not demonstrate ineffective assistance.  As Mr. Hightower highlights in his Memorandum of Law, the prosecution elicited admissions from both police officers that neither actually saw the gun fall from Mr. Hightower's body and that they had testified to the contrary

before the state grand jury. (Def. Memo. at 6-7; Tr. at 45-46, 111-14). That is precisely the purpose that Mr. Hightower asserts his trial counsel failed to accomplish. Failure to extract the same admissions would not constitute ineffective assistance. See, e.g., Hedrick v. True, 443 F.3d 342, 357 (4th Cir. 2006)(failure to cross-examine witness regarding evidence adduced on direct examination not ineffective assistance), cited in Jackson v. Lee, No. 10 Civ. 3062, 2010 WL 4628013, at *42 (S.D.N.Y. Nov. 16, 2010); Samuels v. Bennett, No. 03 Civ. 2340, 2009 WL 2516850, at *23 (S.D.N.Y. Aug. 17, 2009) (counsel not ineffective for failing to present cumulative evidence). Moreover, considering "the totality of the evidence before the judge," Strickland, 466 U.S. at 695, it is not reasonably probable that the outcome of Mr. Hightower's trial would have been different even had his trial counsel failed to impeach the police officers with their state grand jury testimony. Thus, Mr. Hightower cannot demonstrate prejudice.

Nor does Mr. Hightower have a claim stemming from the hearing on the suppression motion. Judge Rakoff held the hearing on the suppression motion after he had heard all of the trial evidence, including the repeated impeachment of Officer Bishop and Officer Shala. In ruling on the motion, Judge Rakoff noted that he received the testimony of Officer Bishop and Officer Shala for purposes of both the suppression hearing and the trial. (Tr. at

9

247). Moreover, he commented on the problems with their testimony, ultimately finding that the grand jury testimony "was not materially misleading," even if "[t]he best testimony would have been the much more punctilious description that emerged" at trial. (Tr. at 217). Because the grand jury testimony was considered in connection with the suppression motion, trial counsel cannot have been ineffective on this ground.

Likewise, an argument that trial counsel was ineffective for failing to obtain and use the federal grand jury minutes for impeachment purposes at trial also fails. The government has represented that neither Officer Bishop nor Officer Shala testified before the federal grand jury. (Resp. Memo. at 7 ("[N]either of the officers testified before the federal grand jury . . . .")). Mr. Hightower's counsel made the same representation in his post-trial motion to dismiss the indictment. (London Ltr. at 7). Thus, neither officer could be impeached at trial with inconsistencies from their federal grand jury testimony -- there was none. Moreover, presentation of Detective Barbot's grand jury testimony to highlight inconsistencies from the state grand jury testimony would have been merely cumulative of testimony elicited from the two officers themselves on both direct and cross-examination. See, e.g., Samuels, 2009 WL 2516850, at *23.

To the extent that Mr. Hightower argues that his counsel was

ineffective for failing to call Detective Barbot as a witness at trial and attempting to impeach him with his own grand jury testimony, this argument, too, is unavailing.  First, there is no reason to believe that Detective Barbot's trial testimony would have been inconsistent with his grand jury testimony.  More importantly, however, it is well-settled that "'[t]he decision whether to call any witnesses on behalf of the defendant, and if so, which witnesses to call, is a tactical decision'" that "cannot form the basis of a meritorious ineffective assistance claim." United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) (quoting United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992)); see also Samuels, 2009 WL 2516850, at *22.  Therefore, the defendant has no claim for ineffective assistance of trial counsel based on the failure to obtain testimony from the federal grand jury.

Conclusion

For the reasons set forth above, I recommend that Mr. Hightower's Section 2255 motion be denied.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, Room 1340, and to the chambers of the

undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.

Failure to file timely objections will preclude appellate review.

                        Respectfully Submitted,

                        */s/ James C. Francis IV*
                        JAMES C. FRANCIS IV
                        UNITED STATES MAGISTRATE JUDGE.

Dated: New York, New York
      March 7, 2012

Copies mailed this date to:

Randy Hightower
60558-054
USP Allenwood
P.O. Box 3000
White Deer, PA  17887

Edward Y. Kim, Esq.
Assistant United States Attorney
86 Chambers Street
New York, NY 10007